1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   GARY LEE SNIDARICH,

11                         Plaintiff,

12          v.

13   CAROLYN W. COLVIN, Acting
     Commissioner of the Social Security
14   Administration,

15                         Defendant.

16

CASE NO. 13-cv-06068 BHS

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

Noting Date: August 15, 2014

17          This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by *Mathews, Secretary of  H.E.W. v. Weber*, 423 U.S. 261,

20   271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 14, 18).

21          After considering and reviewing the record, the Court finds that the ALJ

22   erroneously evaluated the opinions of the examining psychologists and the lay witness.

23

24

These errors were harmful, and therefore the Commissioner's decision should be reversed and remanded for further proceedings.

<u>BACKGROUND</u>

Plaintiff, GARY LEE SNIDARICH, was born in 1966 and was 40 years old on the alleged date of disability onset of March 7, 2007 (*see* Tr. 148-54).  Plaintiff has a twelfth grade education (Tr. 39).  Plaintiff has some work experience doing general labor at construction sites and as a choker setter for a logging company (Tr. 41-42).  The logging job ended when he was assaulted on the crew bus and shattered his leg (Tr. 43).

According to the ALJ, plaintiff has at least the severe impairments of "lumbar degenerative disc disease with mild foraminal stenosis and mild canal stenosis, left tib-fib fracture with rod and screw placement and removal of 2/4 screws, depression, not otherwise specified, generalized anxiety disorder, cannabis abuse, and dependent personality traits (20 CFR 416.920(c))" (Tr. 13).

At the time of the hearing, plaintiff was single, living alone in a basement apartment (Tr. 39).

<u>PROCEDURAL HISTORY</u>

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* Tr. 83-86, 88-95, *see also* Tr. 148-56).  Plaintiff's requested hearing was held before Administrative Law Judge James W. Sherry ("the ALJ") on August 3, 2012 (*see* Tr. 29-80).  On August 14, 2012, the ALJ issued a written

decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social

Security Act (*see* Tr.8-28).

On October 21, 2013, the Appeals Council denied plaintiff's request for review,

making the written decision by the ALJ the final agency decision subject to judicial

review (Tr. 1-6).  *See* 20 C.F.R. § 404.981.  Plaintiff filed a complaint in this Court

seeking judicial review of the ALJ's written decision in December, 2013 (*see* ECF No.

1).  Defendant filed the sealed administrative record regarding this matter ("Tr.") on

March 3, 2014 (*see* ECF Nos. 11, 12).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or

not the ALJ properly considered the opinions of examining psychologists Janis Lewis,

Ph.D., and Silverio Arenas, Jr., Ph.D.; (2) Whether or not the ALJ properly considered

the opinion of treating sources Marsha Geeting, BA, AAC, and Bonnie Anderson, PA-C;

(3) Whether or not the ALJ properly considered the lay witness statement of Harold

Justice; and (4) Whether or not the ALJ properly found plaintiff not to be credible (*see*

ECF No. 14).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)).

1

<div align="center" style="text-decoration:underline">DISCUSSION</div>

2

**(1)    Whether or not the ALJ properly evaluated the opinions of examining psychologists Janis Lewis, Ph.D., and Silverio Arenas, Jr., Ph.D.**

3

4

Plaintiff challenges the ALJ's rejection of the opinions of examining psychologists

5

Dr. Lewis and Dr. Arenas.  The ALJ must provide "clear and convincing" reasons for

6

rejecting the uncontradicted opinion of either a treating or examining physician or

7

psychologist.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v.*

8

*Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

9

1990)). But when a treating or examining physician's opinion is contradicted, that

10

opinion can be rejected "for specific and legitimate reasons that are supported by

11

substantial evidence in the record."  *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v.*

12

*Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th

13

Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough

14

summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

15

and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing*

16

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

17

In addition, the ALJ must explain why her own interpretations, rather than those of

18

the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey, supra*, 849 F.2d

19

at 421-22). But, the Commissioner "may not reject 'significant probative evidence'

20

without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting*

21

*Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

22

23

24

1  F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for

2  disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

3  ### A.   Dr. Lewis

4  Dr. Lewis examined plaintiff in July and December 2009 (Tr. 308-16, 322-29).

5  She diagnosed plaintiff with alcohol abuse in sustained partial remission, cannabis abuse

6  (intermittent), generalized anxiety disorder, and depressive disorder, not otherwise

7  specified (Tr. 310, 324).  In her first examination, she found that plaintiff's symptoms

8  would have either a mild or moderate impact on his work activities (Tr. 309).  She opined

9  that he was moderately limited in his cognitive abilities and his ability to interact with co-

10 workers, supervisors, and the public (Tr. 311).  Dr. Lewis also opined that he was

11 markedly limited in his ability to respond appropriately to and tolerate the pressures and

12 expectations of a normal work setting (*id.*).  In her second examination, she found that

13 most of plaintiff's symptoms would have either a mild or moderate impact on his work

14 activities, however his tangential thoughts and perseveration on his domestic problems

15 would have a marked impact on his work activities (Tr. 323).  She assessed essentially

16 the same functional limitations as in her first opinion (Tr. 325).

17 The ALJ gave Dr. Lewis's opinions little weight for two reasons.  First, the ALJ

18 found that the opinions were internally inconsistent because Dr. Lewis opined that

19 plaintiff could not respond appropriately to or tolerate the pressures and expectations of a

20 normal work setting, but also found that plaintiff "had only mild to moderate symptoms

21 and only moderate limitations in other cognitive and social factors" (Tr. 20).  Plaintiff

22 contends this reason is insufficient, and the Court agrees.  According to the Ninth Circuit,

1  "[W]here the purported existence of an inconsistency is squarely contradicted by the

2  record, it may not serve as the basis for the rejection of an examining physician's

3  conclusion." *Nguyen v. Chatter*, 100 F.3d 1462, 1465 (9th Cir. 1996).  Here, Dr. Lewis's

4  opinions are not internally inconsistent.  There is nothing inconsistent between a finding

5  that individual symptoms independently would have a mild or moderate impact on

6  plaintiff's work activities and a finding that plaintiff would be markedly limited in his

7  ability to respond appropriately to and tolerate the pressures and expectations of a normal

8  work setting.  Similarly, there is no inconsistency between Dr. Lewis's opinion that

9  plaintiff was moderately limited in most functional areas but markedly limited in his

10  ability to respond to and tolerate a normal work setting.  Indeed, the questions regarding

11  functional limitations address different abilities, and thus it is reasonable for an individual

12  to have different levels of limitation in the different areas.  The ALJ's finding that Dr.

13  Lewis's opinion was internally inconsistent is not supported by substantial evidence.

14  

15      Second, the ALJ found that Dr. Lewis "relied heavily upon the claimant's own

16  self-report of symptoms" (Tr. 20).  Plaintiff contends this finding is not supported by

17  substantial evidence, and again the Court agrees.  According to the Ninth Circuit, "[an]

18  ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a

19  claimant self-reports that have been properly discounted as incredible." *Tommasetti v.*

20  *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec.*

21  *Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th

22  Cir. 1989)). This situation is distinguishable from one in which the doctor provides her

23  own observations in support of her assessments and opinions. *See Ryan v. Comm'r of*

*Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).  Here, Dr. Lewis's opinions are replete with her own observations of plaintiff's symptoms and limitations.  She observed his slow pace, weak recall of details (he had to refer to notes), tearfulness, religious preoccupation, low self-image, low stress tolerance, pessimism, and tangential thought content (Tr. 309, 323).  She also supported her opinions with her observations that he was awkward when interacting with people in the lobby and had poor memory, as well as with the Mental Status Examination results (i.e., difficulty with serial 7s) (Tr. 311, 325).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate

1   the clinician's 'conversation' to a 'mental status examination.'" *Trzepacz, supra*, The

2   Psychiatric Mental Status Examination 3. A mental health professional is trained to

3   observe patients for signs of their mental health not rendered obvious by the patient's

4   subjective reports, in part because the patient's self-reported history is "biased by their

5   understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is

6   not uncommon for a person suffering from a mental illness to be unaware that her

7   "condition reflects a potentially serious mental illness." *Nguyen, supra*, 100 F.3d at 1465

8   (citation omitted).  Therefore, the ALJ's finding that Dr. Lewis relied heavily on the

9   subjective nature of plaintiff's complaints is undermined by the fact that she performed

10  Mental Status Examinations.

11

12          Defendant contends the ALJ properly found that Dr. Lewis relied on plaintiff's

13  self-reports because she did not support her opinion of moderate limitations in his ability

14  to perform routine tasks with personal observations (*see* Tr. 311, 325).  While true, this

15  fact alone does not provide substantial evidence for the ALJ's conclusion when the Dr.

16  Lewis's opinions are viewed as a whole.  Accordingly, the ALJ failed to provide any

17  specific and legitimate reason, supported by substantial evidence, to reject Dr. Lewis's

18  opinions.

19          The ALJ's erroneous rejection of Dr. Lewis's opinions was harmful.  The Ninth

20  Circuit has "recognized that harmless error principles apply in the Social Security Act

21  context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v.

22  Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006)

23  (collecting cases)). The court noted multiple instances of the application of these

24

principles. *Id*. (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id*. (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).  In contrast to the instances where an ALJ's error is harmless, here, the ALJ's step four and step five findings are based on VE testimony that did not take into account all of the limitations Dr. Lewis assessed.  As such, these findings are not supported by substantial evidence. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (a VE's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

As discussed below, remand is the appropriate remedy for the ALJ's erroneous evaluation of Dr. Lewis's opinions.

1

**B.     Dr. Arenas**

2

In November 2010, Dr. Arenas reviewed plaintiff's medical records, performed a

3

psychological evaluation, and administered a Mental Status Examination, Burns

4

Depression Index, and a Burns Anxiety Index (Tr. 415-21).  He diagnosed plaintiff with

5

cognitive disorder, not otherwise specified, related to emotional and unknown factors;

6

anxiety disorder, not otherwise specified, with generalized moderate features, chronic;

7

alcohol dependence, in partially sustained remission; cannabis dependence;

8

polysubstance dependence, in partially sustained remission; depressive disorder, not

9

otherwise specified, with major features, chronic, moderate; and learning disorder, not

10

otherwise specified, with deficits in all areas (Tr. 420-21).  He summarized his findings

11

and opined:

12

13
> Mental status examination noted mild-to-significant problems in the areas
> of attitude/behavior, affect/mood, thought flow, recent memory, immediate

14
> memory, knowledge fund, and in attention/concentration, with other
> aspects being normal.  The Burns scales suggested a moderate level of

15
> depression and a moderate level of anxiety with related symptoms.
> Overall, the client's abilities to reason and understand, attend/concentrate,

16
> remember, pace, persist, and to tolerate/manage stress are all adequately
> functional relative to the presenting problems, within his present

17
> limited/curtailed interactive environment, but would be dysfunctional
> outside of that, as in any competitive work situation.

18

19

(Tr. 420).

20

The ALJ gave Dr. Arenas's opinion little weight for three reasons.  First, the ALJ

21

found that the opinion was "not consistent with the claimant's reported functional

22

abilities" of riding a bike, writing poetry, watching television and movies, using the

23

internet, playing video games, fishing, camping, and interacting with family and friends

24

(Tr. 20, 420).  An ALJ may reject an opinion that is inconsistent with the claimant's level of activity.  *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  Plaintiff nevertheless contends the ALJ failed to explain how his functional abilities are inconsistent with Dr. Arenas's opinion, particularly given that Dr. Arenas opined plaintiff was capable of functioning in his "present limited/curtailed interactive environment" but would be dysfunctional in a competitive work situation (*see* Tr. 420).  The Court agrees. None of plaintiff's minimal activities outside of the workplace are inconsistent with Dr. Arenas's opinion that plaintiff would have difficulties *in the workplace* with his ability to reason and understand, attend and concentrate, remember, pace, persist, and tolerate and manage stress.

Defendant asserts that Dr. Arenas's opinion also is inconsistent with his finding that plaintiff "mostly has no problems interacting with people or going out in public" (Tr. 420).  To the contrary, Dr. Arenas's ultimate opinion did not indicate any limitation with interacting with people or going out in public.  Rather, it was limited to plaintiff's ability to reason and understand, attend and concentrate, remember, pace, persist, and tolerate and manage stress (*see* Tr. 420).  Thus defendant attempts to create an inconsistency where there is none.  *See Nguyen, supra*, 100 F.3d at 1465 ("[W]here the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusion.")  Substantial evidence does not support the ALJ's finding that Dr. Arenas's opinion is inconsistent with plaintiff's activities.

Second, the ALJ rejected Dr. Arenas's opinion because he "only saw the claimant once, which provided him with a snapshot of the claimant's abilities and not a full picture" (Tr. 20).  Although examining doctors often see a claimant only once, the Ninth Circuit has been clear that, in general, more weight should be given to the opinion of an examining doctor than to a non-examining doctor, who gains a longitudinal picture by reviewing the claimant's medical records.  *See, e.g.*, *Lester, supra*, 81 F.3d at 830.  As such, the ALJ erred in rejecting Dr. Arenas's opinion based on the fact that he was an examining doctor.  Moreover, Dr. Arenas did more than just examine plaintiff; he also reviewed plaintiff's medical records, giving him the longitudinal view the ALJ found he lacked (*see* Tr. 415-16).

Finally, the ALJ found that "Dr. Arenas also relied upon the claimant's own self-reports" (Tr. 20).  As noted above, however, an ALJ may not reject an examining physician opinion "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."  *Ryan, supra*, 528 F.3d at 1199-1200.  Dr. Arenas administered a Mental Status Examination, and he cited those findings as the basis for his opinion (*see* Tr. 420).  He also reviewed plaintiff's medical records (Tr. 415-16).  As in *Ryan*, the record does not suggest that Dr. Arenas relied on plaintiff's description of symptoms more than his own clinical observations.  *See Ryan*, 528 F.3d at 1199-1200.  Thus the ALJ erred in rejecting Dr. Arenas's opinion as based on plaintiff's self-reports.

Defendant nevertheless argues that the ALJ properly relied on the opinions of the non-examining psychologists, one of whom assigned Dr. Arenas's opinion "little weight"

because he "did not specify which areas he believed were significantly impaired, nor did

he provide a justification for his opinion" (Tr. 422).  The ALJ, however, did not reject Dr.

Arenas's opinion for the reasons provided by the non-examining doctor (*see* AR 20).

Consequently, defendant's argument is an improper *post hoc* rationalization.  *See Connett*

*v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (district court erred in affirming based on

evidence the ALJ did not discuss); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,

1225 (9th Cir. 2009) (the Court reviews the ALJ's decision "based on the reasoning and

factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit

what the adjudicator may have been thinking") (citing, *inter alia*, *Snell v. Apfel*, 177 F.3d

128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let

claimants understand the disposition of their cases…")).

      In sum, the ALJ failed to provide any specific and legitimate reason, supported by

substantial evidence, for discounting Dr. Arenas's opinion.  This error was harmful

because the ALJ's step four and step five findings are based on VE testimony that did not

account for all of the limitations Dr. Arenas assessed.  *See Matthews, supra*, 10 F.3d at

681.  On remand, the ALJ should evaluate Dr. Arenas's opinions anew and, as necessary.

**(2)   Whether or not the ALJ properly considered the opinion of treating sources Marsha Geeting, BA, AAC, and Bonnie Anderson, PA-C.**

      Plaintiff challenges the ALJ's rejection of the opinion of Ms. Geeting and Ms.

Anderson, his treating therapist and treating medical provider, respectively (*see* Tr. 20-

21, 537-38).  Because the Court recommends remand so that the ALJ can reevaluate the

1  medical evidence, the ALJ will also need to reconsider his overall evaluation of the

2  evidence.

3  **(3)    Whether or not the ALJ properly considered the lay witness testimony.**

4      Plaintiff challenges the ALJ's consideration of the lay witness statement of Harold

5  Justice.  In July 2012, Mr. Justice, a friend and former employer of plaintiff, submitted a

6  statement that plaintiff is unable to accomplish simple tasks, such as mowing the yard

7  with a riding lawn mower, due to his constant worry over "small things" (Tr. 291).  Mr.

8  Justice stated plaintiff loses focus and obsesses over small worries, is easily distracted

9  and rarely finishes any task, complains constantly about back pain, is on medication that

10 causes him to feel tired and sleepy, and has difficulty bending over, lifting more than 20

11 pounds, twisting, turning, walking, and sitting for long periods of time (*id.*).  The ALJ

12 found that Mr. Justice's opinion was "somewhat consistent with the record and supports

13 the level of limitation in the residual functional capacity" (Tr. 21).  Accordingly, the ALJ

14 gave it "some weight" (*id.*).

15     Plaintiff maintains the ALJ erred by failing to incorporate all of Mr. Justice's

16 opinions into the RFC.  The Court agrees.  An ALJ may disregard opinion evidence

17 provided by both types of "other sources," characterized by the Ninth Circuit as lay

18 testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner,*

19 *supra,* 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see*

20 *also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in

21 determining whether or not "a claimant is disabled, an ALJ must consider lay witness

22 testimony concerning a claimant's ability to work."  *Stout v. Commissioner, Social*

1     *Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*,

2     12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and

3     (e)).

4          As noted above, an ALJ must provide germane reasons to reject a lay witness

5     statement, which the ALJ failed to do here.  This error was harmful because all of the

6     limitations Mr. Justice observed were not incorporated into the RFC, and therefore they

7     were not included in the hypothetical presented to the VE.  For example, the RFC limits

8     plaintiff to sitting, standing, and walking for six hours in an eight-hour day, whereas Mr.

9     Justice stated plaintiff has difficulty walking and is unable to sit for long periods of time

10    (*see* Tr. 15-16, 291).  On remand, the ALJ should reevaluate Mr. Justice's opinion.

11

12 **(4)**      **Whether or not the ALJ properly found plaintiff not to be credible.**

13          The Court already has concluded that the ALJ erred in reviewing the medical

14    evidence and that this matter should be reversed and remanded for further consideration,

15    *see supra*, section 1.  In addition, a determination of a claimant's credibility relies in part

16    on the assessment of the medical evidence.  *See* 20 C.F.R. § 404.1529(c).  Therefore,

17    plaintiff's credibility should be assessed anew following remand of this matter.

18 **(5)**      **Whether or not the Court should remand for further administrative**

19                 **proceedings or for an award of benefits.**

20          Generally when the Social Security Administration does not determine a

21    claimant's application properly, "'the proper course, except in rare circumstances, is

22    to remand to the agency for additional investigation or explanation.'"  *Benecke v.*

23    *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  However, the

24

Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen, supra*, 80 F.3d at 1292).  It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved.  *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court.  *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).  Accordingly, the Court deems it appropriate to remand for further administrative proceedings, rather than for an award of benefits.

## CONCLUSION

For the stated reasons and based on the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

matter for consideration on August 15, 2014, as noted in the caption.

　　　　Dated this 18th day of July, 2014.


　　　　　　　　　　　　　　　　　　　　　　J. Richard Creatura
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge